# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YEOSHUA SORIAS and<br>ZILICON ACCESSORIES LLC<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>NATIONAL CELLULAR USA, INC.<br>MARK GROSSMAN, ZEEV<br>GROSSMAN, DAVID GROSSMAN<br>and DOEs 1 through 10,<br><br>　　　　　　　　　　Defendants. | Civil Action No. 14-cv-2897<br><br>COMPLAINT FOR PATENT<br>INFRINGEMENT, MAJOR BREACH<br>AND REQUEST FOR RECISSION OF<br>AGREEMENT AND, ALTERNATIVELY,<br>FOR DECLARATION OF NO<br>AGREEMENT BREACH |

## COMPLAINT

Yeoshua Sorias ("Sorias") and Zilicon Accessories, LLC ("Zilicon"), collectively, "Plaintiffs", by and through their attorneys, complaining of the Defendants National Cellular USA, Inc. ("National Cellular"), Mark Grossman, Zeev Grossman and David Grossman (collectively "the Grossmans"), all collectively "the Defendants", allege upon knowledge as to themselves and their own actions, and upon information and belief as to all other matters alleged below, as follows.

## NATURE OF ACTION

1.　　This is an action for patent infringement, breach of and request for rescission of an agreement and, alternatively, for a declaratory judgment of no breach of agreement by Plaintiffs.

## THE PARTIES

2. Plaintiff Sorias is a resident of the County of Kings, State of New York.

3. Plaintiff Zilicon is a limited liability company of New York, in which Sorias is a principal and officer.

4. National Cellular is a domestic corporation engaged in the production, marketing of cell phone accessories with its principle place of business located at 620 First Avenue, Brooklyn, New York.

5. Mark Grossman is principal and officer of National Cellular.

6. Zeev Grossman is a principal and officer of National Cellular.

7. David Grossman is a principal and officer of National Cellular.

8. Mark Grossman, Zeev Grossman and David Grossman are brothers and jointly run all the affairs and make all of the key decisions relative to the business of National Cellular.

## JURISDICTION AND VENUE

9. This Court has personal jurisdiction over the Defendants by reason of their residence status in this District, their transaction of business in this District, and their commission of tortious acts within this District.

10. Subject matter jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §1331 and §1338(a). Venue is proper in this Court, pursuant to 28 U.S.C. §1391 and §1400.

**FACTS**

**The Sorias Patents and the Defendants' Infringement Thereof**

11.     Sorias is a named inventor and owns all rights, title and interest in and to the just issued U.S. patent no. 8,712,486 ("the '486 Patent") directed to an invention entitled Detachably Integrated Battery Charger For Mobile Cell Phones And Like Devices. See **Exhibit A** attached hereto.

12.     The invention in the '486 Patent is primarily directed to a mobile phone charger that can be kept attached to the backside of the phone, with AC prongs folding in opposite directions flatly onto the back of the charger, so the phone with its charger can easily fit in one's pocket.

13.     The invention in the '486 Patent was made in 2010. The '486 Patent claims priority to provisional patent application no. 61/432,050 filed on January 12, 2011 ("the '050 Patent Application"). See **Exhibit B** attached hereto.

14.     On information and belief, National Cellular has invested great sums over the past two years and, with the intimate involvement of the Grossman brothers, has produced a telephone charger that is uniquely configured to be attached to the backside of the telephone and which has AC prongs that fold in opposite directions flatly onto the back of the charger (the "NC Charger"). The NC Charger reads on many of the patent claims of the '486 Patent.

15.     On information and belief, National Cellular continues to be engaged in the making, using, selling and offering to sell the NC Charger to various entities in the United States.

16.     On information and belief, National Cellular and its principals have been actively monitoring the patent activities of Sorias and are fully aware of the issuance of the

'486 Patent and despite requests to cease and desist from selling the NC Charger and/or to negotiate with Sorias to purchase their molds, equipment and other information related to the NC Charger, National Cellular has refused to do so, insisting that it has a right to continue to offer to sell and sell the NC Chargers to the United States marketplace.

17. The Defendants' activities complained of herein constitute willful and knowing infringement upon the '486 Patent.

18. On information and belief, the NC Charger has been deemed by many to be an exceptional product. Tim Cook, the president of Apple Corporation ("Apple"), has himself seen the NC Charger and expressed his amazement with it. The favorable impression of the marketplace about the NC Charger product is entirely due to its incorporation of the teachings and its utilization of the unique disclosures and concepts in the '486 Patent.

19. The Grossmans and National Cellular have been aware of the contents and disclosure provided by the '486 Patent since at least January 13, 2011.

20. Sorias is also a named inventor and owns all rights, title and interest in and to U.S. Patent No. 8,712,482 ("the '482 Patent"). See **Exhibit C** attached hereto.

21. The application for the '482 Patent was filed July 12, 2012. The '482 Patent builds upon and adds additional functionality and improvements to the teachings of Sorias' first, '486 Patent. An important feature provided by the '482 Patent is a "cover structure" which conceals the AC prongs in their stowed position.

22. Certain features and functionality, including the "cover structure", which is disclosed in the '482 Patent were invented sometime after January 2, 2012.

23. On information and belief, during negotiations between National Cellular and Apple to market the NC Charger, an earlier version of the NC Charger was inspected and the Apple people commented that it would be useful to add to the NC Charger a "cover structure" to conceal the AC prongs in the stowed position.

24. On information and belief, National Cellular thereafter retained a designer and successfully constructed such cover structure which is included in the NC Charger being presently offered for sale to the marketplace.

25. At various times during meetings between the Parties hereto, National Cellular was informed by the Plaintiffs that the cover feature in the NC Charger is the subject of a separate patent application being prosecuted by Sorias and its incorporation in the NC Charger is outside the scope of any Agreement between the parties hereto and that its sale will constitute willful and knowing infringement of Sorias' patent rights.

26. National Cellular and its principals ignored Plaintiffs' demands and insisted that they have a right to make the NC Charger with the cover structure.

27. The Defendants' activities complained of herein constitute willful and knowing infringement upon Sorias' '482 Patent.

28. The continued marketing by Defendants of the NC Charger is a brazen and willful infringement on at least several of the patent claims of the '482 Patent and the continued infringement thereof, if not enjoined, has caused and is causing the Plaintiffs herein irreparable harm.

**The December 2011 Sorias and National Cellular Agreement**

29. On January 13, 2011, the day after he filed the '050 Patent Application, Sorias met with Mark Grossman and others at National Cellular, and discussed forming a

business enterprise for marketing the charger described in the '050 Patent Application. Sorias provided to National Cellular a full copy of the '050 Patent Application.

30. National Cellular executed a Non Disclosure Agreement in relation to the invention disclosed by Sorias.

31. Shortly before his January 13, 2011 meeting with National Cellular, Sorias purchased from Amazon, two, so-called, kickstand units, each of which consists of a cover that attaches to the phone and a leg at the back which can be flipped out to allow a cell phone to stand inclined on a desktop. Sorias modified one of the Amazon-purchased stands to have two kickstands at the back, for the purpose of creating a mockup of what a charger with foldable AC prongs might look like. A photo of the Sorias mockup is shown directly below (the "Mockup").



32. During the January 13, 2011 meeting with National Cellular, Sorias exhibited the Mockup, to enable the National Cellular people to quickly grasp the concept of the involved invention.

33. The Mockup contained no electrical circuits at all, nor any charging circuit for a phone, nor any AC prongs, nor any electrical connectors. The kickstand legs in the

Mockup had bent distal ends that did not allow the Mockup to be inserted into an AC wall outlet. Moreover, the rear wall of the Mockup is extremely thin and cannot contain any charging circuitry therein. Parenthetically, photos showing the Mockup resting against a wall socket were obtained by using 2-sided adhesive tape to demonstrate the "concept".

34. The Grossmans enthusiastically embraced the idea of developing this product jointly with Sorias and offered a 50/50 equal partnership in such venture.

35. The Grossmans stated to Sorias that he would earn millions by allowing National Cellular to develop this product. About three and a half years have passed and Sorias has thus far received not a penny.

36. During the ensuing weeks and months, National Cellular had an apparent change of heart, initially stating that they would only agree to pay Sorias a small percentage royalty, insisting that patent and technology licensors typically are paid only a royalty of just a few percentage points.

37. Later in 2011, National Cellular informed Sorias that it is no longer interested in pursuing the Sorias product altogether, because its patent counsel, having performed a prior art search and analysis, advised National Cellular that no patent could or would ever issue on the device disclosed in Sorias patent application (**Exhibit B**).

38. Sorias indefatigably fought on. He asked National Cellular to allow its patent counsel to discuss the matter directly with his patent counsel. And, indeed, the two patent attorneys discussed the matter, but no further progress resulted, as National Cellular persisted that it is not interested in a product that cannot be protected by patent.

39. Sorias persisted in his pursuit of National Cellular and National Cellular eventually relented by preparing a draft Agreement, pursuant to which Sorias would receive

a royalty of a few percentage points and National Cellular would have the rights under certain circumstances to acquire ownership of any patents that might issue. Sorias rejected that Agreement offer.

40. The breakthrough came in late 2011, when National Cellular proposed new agreement terms, whereby it would be granted the <u>exclusive right</u> to sell the subject telephone charger at a thickness of 16 or more millimeters, and Sorias would <u>retain</u> the <u>exclusive right</u> to sell the same charger at a thickness below 16 millimeters.

41. Sorias accepted this key term, as he regarded the right to make his own product at less than 16 millimeters to be very valuable.

42. After further negotiations, the Parties executed a "Product License Agreement" dated December 22, 2011 (the "December 2011 Agreement"). See attached **Exhibit D**.

43. The December 2011 Agreement refers to Sorias' "<u>concept</u> of an extra thin telephone charger that employs electrical prongs that pivot into flattened positions,…in the form of Exhibit A". A selection of those Exhibit A photos are attached hereto as **Exhibit E**. Those photos do not show an operable charger. They are photos of the aforementioned Mockup Model which Sorias made from two kickstand covers he purchased from Amazon.

44. The December 2011 Agreement provided, *inter alia*:

> 3. Yeoshua Sorias grants National Cellular exclusive right and license to make the Sorias Product at the thickness which is equal to or greater than 16 mm, and until December 31, 2018. …
>
> 4. Yeoshua Sorias <u>retains exclusive rights</u> to manufacture and market, either himself or through his assignees and/or licensees, the Sorias Product with thicknesses of less than 16 mm. … (Emphasis added).

> 10. National Cellular represents that <u>within 180 days</u> of the signing of this Agreement <u>it will have first production runs</u> of the Sorias Product and will provide at least three samples thereof to Yeoshua Sorias, as soon as available. If it fails to meet that requirement, <u>its License herein shall expire</u>." (Emphasis added).

45. Despite repeated requests by Sorias to be kept informed about the development of the Sorias Product, National Cellular was decidedly coy and secretive with Sorias, refusing to divulge anything about the product development.

46. Eventually, National Cellular invited Sorias to meet with them in their offices on June 20, 2012. The meeting occurred a day or two <u>after the expiration</u> of the 180 days period, in paragraph 10 of the December 2011 Agreement.

47. At the meeting on June 20, 2012 Sorias met with the Grossmans and with National Cellular's director of operations, Levy Salvay.

48. On that day and at that meeting, National Cellular refused to show or to provide to Sorias the charger samples required by paragraph 10 of the December 2011 Agreement, insisting that Sorias <u>must</u> first sign a June 20, 2012 letter (the "June 2012 Letter") (attached as **Exhibit F**) prepared by National Cellular, which states:

> "Dear Josh,
> By signing below you are confirming receipt of the 3 working and completed samples of the iPhone case with outlet prongs as per our agreement specks (sic) (please see pictures below). Also, you agree that you have seen and verified the documentation from our overseas producers that the product production has begun."

49. Prior to signing the June 2012 Letter, Sorias requested to see the "documentation" referred to in the Letter. Levy Salvay provided a white sheet of paper, sized about 1x1 inches, apparently torn off of another sheet of paper, with just three words

9

on it.  On information and belief, the three words on that piece of paper were "we start production" or "we begin production".  Nothing else was on the paper.

50. Sorias demanded to see the name of the company that purportedly wrote that note and the signature line.  The Grossmans informed him that they would not trust him with this information and would not show it to him.  They said words to the effect: "if you don't sign this letter, you will never get to see the product samples".  Sorias expressed his concern that if he signed the letter, the Grossmans might not give him the samples, to which they responded: "You either sign, or you don't see or receive the samples."  Sorias decided to trust them, he signed the June 2012 Letter and was provided with three product samples.

51. As he was leaving the offices of National Cellular, Sorias saw Mr. Salvay crumble up the 1x1 inch paper and throw it into the wastebasket.

52. While at National Cellular, Sorias could not determine anything about the "specks" of the charger prototypes.  Specialized tools are needed to make the appropriate electrical and mechanical measurements.  Nonetheless, Sorias was very excited that such products finally existed and simply rushed out believing that those samples complied with the "specks".

53. Eventually, Sorias gained access to tools that allowed him to measure the thickness of the charger samples and it was at that time that he determined that the samples' thicknesses measured <u>below 16 mm</u>, in clear breach of the terms of the December 2011 Agreement.  Eventually, he informed National Cellular of that fact.

54. The key 2011 document that explains which dimension of the charger represented its "thickness" is the '050 Patent Application, which became the '486 Patent.  That document unambiguously states that "thickness" refers to the thickness of the charger

itself, not the <u>combined</u> thicknesses of the charger with the telephone to which it is attachable.

55. The photos attached to the December 2011 Agreement (**Exhibit E** hereto) do not show an actual charger. In fact, they are photos of a kickstand, not a telephone charger, and they are meaningless and useless to determine therefrom any "thickness" measurement. Some of the photos show the mockup mounted on a Blackberry® phone. But the intent was for the charger to be sold in different sizes to fit different phone models.

56. Regardless, National Cellular's ludicrous assertion that the parties intended the "thickness" dimension to include the "height" of the side panels is squarely refuted by the attached March 17, 2011 e-mail (to National Cellular and its patent counsel) showing the Mockup and stating that its "thickness" is 4 mm (**Exhibit G**).

57. Also, the December 2011 Agreement refers to a single "thickness", not to a "thickness" that depends on the phone model to which the charger is designed to be attached.

### National Cellular's Breach Of The December 2011 Agreement

58. The December 2011 Agreement, in paragraph 2 thereof, provides "The NDA Agreement shall continue in force to the extent that National Cellular will not disclose any confidential information provided by Yeoshua Sorias…<u>nor file its own patent applications</u> relative to the Sorias Products" (emphasis added).

59. Despite the clear agreement language that National Cellular is not to file its own patent applications, National Cellular conspired to circumvent this requirement by having such patent applications filed indirectly through one of its investors, Sorias Capital, whose principal, Samuel Zelnick, wrote in an e-mail message dated November 5, 2013: "MOHS [an entity related to National Cellular] also has patents pending on many of the

11

features and functionalities that were developed over their collaboration with Apple which they will defend should any other manufacturer come to market with similar designs/features." (**Exhibit H**).

60. In breach of paragraph 10 of the December 2011 Agreement, National Cellular did not have and did not provide to Sorias "first production runs of the Sorias Product" within the required 180 days.

61. The three charger samples provided to Sorias on June 20, 2012 were not first production runs of the Sorias Product. The documentation provided to Sorias during the June 20, 2012 meeting with National Cellular did not constitute proof that the NC Charger was "in production".

62. Pursuant to paragraph 12 of the December 2011 Agreement, Sorias has informed National Cellular repeatedly that the NC Charger violates the terms of the Agreement, because it has a thickness which is smaller than 16 mm. National Cellular ignored Sorias' notices, insisting, erroneously, that its chargers had a thickness greater than 16 mm.

63. The June 20, 2012 date on which National Cellular purports to have provided the production samples was beyond the 180 days period stipulated in the December 2011 Agreement.

64. National Cellular has breached the December 2011 Agreement in at least four major respects. National Cellular made the Sorias Product at a thickness of below 16 mm. Secondly, National Cellular did not provide first production runs of Sorias chargers to this very date. For example, National Cellular never provided to Sorias a sample of the NC Charger that it attempted to sell to Apple. Thirdly, the NC Charger samples that were

provided on June 20, 2012 were beyond the 180-day period for doing so. Lastly, National Cellular filed its own patent applications, indirectly through its collaborators, in clear violation of a provision in the December 2011 Agreement.

65. The December 2011 Agreement provides explicitly in paragraph 12 thereof, that the aggrieved party or parties will have the right to submit the matter to a Court to decide whether the Agreement should be deemed null and void for a major breach thereof.

66. National Cellular did, in fact, breach major provisions of the December 2011 Agreement. Therefore, pursuant to the Agreement, the December 2011 Agreement must be deemed breached, rescinded and null and void, *ab initio*.

**Zilicon's Telephone Charger**

67. Sorias formed Zilicon to enable him to exploit his rights under the December Agreement and Zilicon has now developed its own phone charger and that charger is becoming available shortly (the "Sorias Charger").

68. The Sorias Charger has a thickness that measures less than 16 mm when measured at the charger body.

69. Contrary to National Cellular, the thickness measurement referred to in the December 2011 Agreement, refers to the thickness of the body of the charger itself, and not the combined thickness of the charger with the telephone to which it is attached.

70. Therefore, even if the December 2011 Agreement is deemed to remain in full force and effect, the marketing and selling of the Sorias Charger does not constitute a violation or a breach of the December 2011 Agreement.

## COUNT I
(Patent Infringement)

71. Plaintiffs repeat and reassert the allegations of paragraphs 1 through 69 herein, as though fully set forth herein.

72. The activities of the Defendants complained of herein constitute a knowing and willful infringement of at least one of the claims of the '486 Patent.

73. The activities of the Defendants complained of herein constitute a knowing and willful infringement of at least one of the claims of the '482 Patent.

74. The activities of the Defendants complained of herein are causing the Plaintiffs continuing and irreparable harm and Plaintiffs are entitled to both a permanent and a preliminary Injunction, directing Defendants to immediately cease their infringements of the '486 Patent and the '482 Patent.

75. As a result of the Defendants' infringement upon the Plaintiffs' patents, the Plaintiffs have suffered and will suffer great monetary losses, loss of good will, erosion of the price that Plaintiffs could realize upon introducing to the marketplace their own Sorias chargers, and Plaintiffs are entitled to compensatory monetary damages which should be trebled, owing to the knowing and willful infringement of the patents, and attorneys' fees and costs, in amounts to be determined at trial, but not less than 10,000,000 dollars assessed against the Defendants jointly and severally.

## COUNT II
(Breach of Contract)

76. Plaintiffs repeat and reassert the allegations of paragraphs 1 through 74 herein, as though fully set forth herein.

77. The December 2011 Agreement has been brazenly and willfully breached by the Defendants in several material respects.

78. The Defendants materially breached terms of the December 2011 Agreement by not providing to Sorias to this very day, first production runs of the NC Charger, by filing their own patent applications (albeit, indirectly), and by marketing chargers that have a thickness of less than 16 mm, despite the reservation to Sorias of the exclusive right to make, sell and market such chargers.

79. Defendants therefore breached the December 2011 Agreement with Sorias, and Sorias has been damaged thereby and is therefore entitled to compensatory and consequential damages in an amount to be proven at trial, including attorneys' fees and costs, in amounts to be determined at trial, but not less than 10,000,000 dollars assessed against the Defendants jointly and severally.

## COUNT III
(Rescission of Contract)

80. Plaintiffs repeat and reassert the allegations of paragraphs 1 through 78 herein, as though fully set forth herein.

81. The Defendants' activities complained of above have been major breaches and, as provided in paragraph 12 of the December 2011 Agreement, Sorias is entitled to judgment by the Court declaring the December 2011 Agreement to be rescinded, null and void, *ab initio*.

## COUNT IV
(Declaration of No Agreement Infringement)

82. Plaintiffs repeat and reassert the allegations of paragraphs 1 through 80 herein, as though fully set forth herein.

15

83. The Plaintiffs' marketing of the Sorias chargers which have thicknesses of less than 16 mm at the charger body are permissible under the clear terms of the December 2011 Agreement.

84. As such, if the Court does not grant Plaintiffs' request that a judgment be entered rescinding the December 2011 Agreement, then Sorias is entitled to a judgment declaring the Sorias chargers to be permitted to be advertised and sold to the marketplace under the very terms of the December 2011 Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows:

A. That United States Letters Patent No. 8,712,486 be adjudged valid and enforceable;

B. That United States Letters Patent No. 8,712,482 be adjudged valid and enforceable;

C. That Defendants be adjudged to have infringed United States Letters Patent Nos. 8,712,486 and 8,712,482, including by contributing to and actively inducing infringement of said patents;

D. That the acts of infringement by the Defendants be adjudged to have been willful and deliberate;

E. That Defendants be ordered to account for and pay to the Plaintiffs the damages sustained by the Plaintiffs due to the Defendants' infringement of United States Letters Patent Nos. 8,712,486 and 8,712,482, but in no event less than the reasonable royalties, pursuant to 35 U.S.C. §284 and §289;

F. That Defendants be ordered to pay pre-judgment and post-judgment interest on the damages awarded against them;

G. That Defendants, their officers, agents, servants, employees and attorneys and any and all persons in active concert or participation with them be preliminarily and permanently enjoined and restrained from infringing rights in United States Letters Patent Nos. 8,712,486 and 8,712,482;

H. That this case be adjudged an exceptional case, and that the Plaintiffs be awarded their costs and attorneys' fees, pursuant to 35 U.S.C. §285 and that such award include trebling of the monetary damages awarded to the Plaintiffs;

I. That the December 2011 Agreement be adjudged to have been breached in major respects by the Defendants and be declared rescinded, null and void, *ab initio*;

J. That the December 2011 Agreement be adjudged to have been breached by the Defendants, if determined to be valid;

K. That the Sorias chargers being offered to the marketplace be adjudged not to be in violation or breach of any of the terms of the December 2011 Agreement; and

L. That the Court grant such other and further relief as it deems just and proper under the circumstances.

Dated: Brooklyn, New York
      May 8, 2014                        Respectfully submitted,

                                          /s/ Tovia Jakubowitz
                                        Tovia Jakubowitz
                                        JAKUBOWITZ & CHUANG LLP
                                        3019 Avenue J
                                        Brooklyn, NY 11210
                                        Telephone: (347) 230-6622
                                        Facsimile: (347) 764-4294
                                        Attorneys for Plaintiffs Yeoshua Sorias and Zilicon Accessories LLC